[880 NYS2d 656]

Karen Cotty, Respondent, v Town of Southampton et al., Appellants-Respondents, Suffolk County Water Authority, Appellant-Respondent/Fourth-Party Plaintiff-Respondent, and Elmore Associates Construction Corp., Defendant/Third-Party Plaintiff, et al., Defendant. Peter Deutch, Third-Party Defendant/Fourth-Party Defendant-Appellant, et al., Fourth-Party Defendant.

Second Department, May 19, 2009

APPEARANCES OF COUNSEL

*Thomas C. Sledjeski, PLLC* (*Anita Nissan Yehuda, P.C.*, Roslyn Heights, of counsel), for Town of Southampton, defendant-appellant-respondent.

*Shayne, Dachs, Corker, Sauer & Dachs, LLP*, Mineola (*Norman H. Dachs* and *Jonathan A. Dachs* of counsel), for Suffolk County Water Authority, defendant-appellant-respondent/fourth-party plaintiff-respondent and CAC Contracting Corp., defendant-appellant-respondent (one brief filed).

*Loccisano & Larkin*, Hauppauge (*Robert X. Larkin* of counsel), for Peter Deutch, third-party defendant/fourth-party defendant-appellant.

*Rosenberg & Gluck, LLP*, Holtsville (*Andrew Bokar* of counsel), for plaintiff-respondent.

## OPINION OF THE COURT

SKELOS, J.P.

When a person voluntarily participates in certain sporting events or athletic activities, an action to recover damages for injuries resulting from conduct or conditions that are inherent in the sport or activity is barred by the doctrine of primary assumption of risk. In this case, where the plaintiff was injured while riding a bicycle on a paved public roadway, we confront the threshold question of whether the plaintiff was engaged in an activity that subjected her to the doctrine of primary assumption of risk.

Beginning on July 24, 2002, pursuant to a contract with the defendant Suffolk County Water Authority (hereinafter SCWA), the defendant CAC Contracting Corp. replaced the asphalt in a trench that had been dug along the edge of Deerfield Road in Southampton for the purpose of installing a conduit for a water

main. Two layers of asphalt were to be laid to fill the trench and bring it level with the preexisting roadway, but at the time of the subject accident, only one layer of asphalt had been laid, leaving a "lip" approximately one inch deep, parallel to the length of the road, where the preexisting roadway and the newly paved section met. At the site of the accident, the lip was not marked by any barricades or traffic cones.

On July 27, 2002, the plaintiff, a member of a bicycle club which engaged in long-distance rides, was the last bicyclist in one of several groups of eight riders cycling on Deerfield Road during a 72-mile ride. The plaintiff testified at a deposition that the road "was not perfectly smooth," and contained potholes. She had previously ridden on the subject road approximately 20 to 30 times, as recently as two to four weeks before the accident, and was aware of construction activity on various portions of the road. The road had no shoulder, and the plaintiff was riding approximately one to two feet from the edge of the road, and approximately 1 to 1½ wheel lengths behind the fourth-party defendant, Peter Deutch, at a maximum speed of 17 to 18 miles per hour. The bicyclists in the front of the line began a "hopping" maneuver with their bicycles to avoid the "lip" in the road. Deutch unsuccessfully attempted the hopping maneuver, and fell in the plaintiff's path. Seeking to avoid Deutch, the plaintiff swerved and slid into the road where she collided with an oncoming car, sustaining injuries.

The plaintiff commenced this personal injury action against, among others, the Town of Southampton, the SCWA, and CAC Contracting Corp. (hereinafter collectively the defendants), and the SCWA impleaded Deutch. The defendants moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them, and Deutch cross-moved for summary judgment dismissing the fourth-party complaint and all related cross claims insofar as asserted against him. The defendants and Deutch (hereinafter collectively the appellants) contended, inter alia, that the plaintiff had assumed the risks commonly associated with bicycle riding. The Supreme Court denied the appellants' motions.

Under the doctrine of primary assumption of risk, a person who voluntarily participates in a sporting activity generally consents, by his or her participation, to those injury-causing events, conditions, and risks which are inherent in the activity (*see Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *Turcotte v Fell*, 68 NY2d 432, 439 [1986]). Risks inherent in a sport-

ing activity are those which are known, apparent, natural, or reasonably foreseeable consequences of the participation (*see Morgan v State of New York*, 90 NY2d at 484; *Turcotte v Fell*, 68 NY2d at 439). Because determining the existence and scope of a duty of care requires "an examination of plaintiff's reasonable expectations of the care owed him by others" (*Turcotte v Fell*, 68 NY2d at 437), the plaintiff's consent does not merely furnish the defendant with a defense; it eliminates the duty of care that would otherwise exist. Accordingly, when a plaintiff assumes the risk of participating in a sporting event, "the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence" (*id.* at 438, quoting Prosser and Keeton, Torts § 68, at 480-481 [5th ed]).

The policy underlying the doctrine of primary assumption of risk is "to facilitate free and vigorous participation in athletic activities" (*Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 657 [1989]). Without the doctrine, athletes may be reluctant to play aggressively, for fear of being sued by an opposing player. As long as the defendant's conduct does not unreasonably increase the risks assumed by the plaintiff, the defendant will be shielded by the doctrine of primary assumption of risk (*see Morgan v State of New York*, 90 NY2d at 485; *Benitez v New York City Bd. of Educ.*, 73 NY2d at 658; *Muniz v Warwick School Dist.*, 293 AD2d 724 [2002]).

The doctrine also has been extended to the condition of the playing surface. If an athlete is injured as a result of a defect in, or feature of, the field, court, track, or course upon which the sport is being played, the owner of the premises will be protected by the doctrine of primary assumption of risk as long as risk presented by the condition is inherent in the sport (*see Trevett v City of Little Falls*, 6 NY3d 884 [2006]; *Sykes v County of Erie*, 94 NY2d 912 [2000]; *Ribaudo v La Salle Inst.*, 45 AD3d 556 [2007]). If the playing surface is as safe as it appears to be, and the condition in question is not concealed such that it unreasonably increases risk assumed by the players, the doctrine applies (*see Fintzi v New Jersey YMHA-YWHA Camps*, 97 NY2d 669 [2001]; *Turcotte v Fell*, 68 NY2d at 439; *Rosenbaum v Bayis Ne'Emon, Inc.*, 32 AD3d 534 [2006]; *Joseph v New York Racing Assn.*, 28 AD3d 105, 108 [2006]).

The Court of Appeals has had no occasion to expound upon the threshold question of what type of activity qualifies as participation in a sporting event for purposes of applying the doctrine of primary assumption of risk. In *Turcotte v Fell*, for

example, the Court had little difficulty in concluding that the doctrine applied to the plaintiff, a professional jockey riding in a horse race at a track owned and operated by the New York Racing Association. Here, had the plaintiff been a professional athlete involved in a bicycle race on a track or a closed course, the doctrine of primary assumption of risk clearly would apply (*cf. Morgan v State of New York*, 90 NY2d at 486; *Joseph v New York Racing Assn.*, 28 AD3d at 108-109). This case, however, presents different circumstances.

In determining whether a bicycle rider has subjected himself or herself to the doctrine of primary assumption of risk, we must consider whether the rider is engaged in a sporting activity, such that his or her consent to the dangers inherent in the activity may reasonably be inferred. In our view, it is not sufficient for a defendant to show that the plaintiff was engaged in some form of leisure activity at the time of the accident. If such a showing were sufficient, the doctrine of primary assumption of risk could be applied to individuals who, for example, are out for a sightseeing drive in an automobile or on a motorcycle, or are jogging, walking, or inline roller skating for exercise, and would absolve municipalities, landowners, drivers, and other potential defendants of all liability for negligently creating risks that might be considered inherent in such leisure activities. Such a broad application of the doctrine of primary assumption of risk would be completely disconnected from the rationale for its existence. The doctrine is not designed to relieve a municipality of its duty to maintain its roadways in a safe condition (*see Sykes v County of Erie*, 94 NY2d at 913 ["the doctrine of assumption of risk does not exculpate a landowner from liability for ordinary negligence in maintaining a premises"]), and such a result does not become justifiable merely because the roadway in question happens to be in use by a person operating a bicycle, as opposed to some other means of transportation (*see Caraballo v City of Yonkers*, 54 AD3d 796, 796-797 [2008] ["the infant plaintiff cannot be said, as a matter of law, to have assumed the risk of being injured by a defective condition of a pothole on a public street, merely because he was participating in the activity of recreational noncompetitive bicycling, and using the bicycle as a means of transportation" (citations omitted)]).

In prior decisions involving injuries sustained by bicycle riders, this Court has concluded that the doctrine of primary assumption of risk applies in some situations, but not in others. For example, in *Calise v City of New York* (239 AD2d 378

[1997]), the plaintiff was thrown from a mountain bike, which he was riding on an unpaved dirt and rock path in a park, when the bike struck an exposed tree root. This Court held that the plaintiff's action was barred by the doctrine of primary assumption of risk, reasoning that "[a]n exposed tree root is a reasonably foreseeable hazard of the sport of biking on unpaved trails, and one that would be readily observable" (*id.* at 379; *see Rivera v Glen Oaks Vil. Owners, Inc.*, 41 AD3d 817, 820-821 [2007] [doctrine of primary assumption of risk applied to plaintiff who was injured when his bicycle struck a hole in a dirt trail located in a wooded area]; *Restaino v Yonkers Bd. of Educ.*, 13 AD3d 432 [2004] [doctrine of primary assumption of risk applied to plaintiff whose bicycle struck "a pothole or rut in the closed parking lot/driveway area of a public school"]; *Goldberg v Town of Hempstead*, 289 AD2d 198 [2001] [doctrine of primary assumption of risk applied to plaintiff who was injured when her bicycle struck a hole in the ground as she rode on a dirt base path of a baseball field]).

By contrast, in both *Vestal v County of Suffolk* (7 AD3d 613 [2004]) and *Moore v City of New York* (29 AD3d 751 [2006]), this Court held that the plaintiffs, who were injured while riding their bicycles on paved pathways in public parks, " 'cannot be said as a matter of law to have assumed the risk of being injured as a result of a defective condition on a paved pathway merely because [they] participated in the activity of bicycling' " (*Moore v City of New York*, 29 AD3d at 752, quoting *Vestal v County of Suffolk*, 7 AD3d at 614-615; *see Caraballo v City of Yonkers*, 54 AD3d at 796-797; *Berfas v Town of Oyster Bay*, 286 AD2d 466 [2001] [defendant failed to establish, as a matter of law, that action by plaintiff, who was thrown from his bicycle when he hit a rut in a paved road, was barred by primary assumption of risk doctrine]). Significantly, this Court reached the same conclusion in *Phillips v County of Nassau* (50 AD3d 755 [2008]), holding that the doctrine of primary assumption of risk did not apply to a plaintiff who was injured when his bicycle struck a raised concrete mound on a public roadway, even though the plaintiff, like the plaintiff in the instant case, was "an avid bicyclist" and was participating in "a noncompetitive, recreational bicycle ride with about eight or nine other riders" (*id.* at 756).

These decisions recognize that riding a bicycle on a paved public roadway normally does not constitute a sporting activity for purposes of applying the primary assumption of risk doctrine. By contrast, mountain biking, and other forms of off-road

bicycle riding, can more readily be classified as sporting activity. Indeed, the irregular surface of an unimproved dirt-bike path is "presumably the very challenge that attracts dirt-bike riders as opposed to riding on a paved surface" (*Schiavone v Brinewood Rod & Gun Club*, 283 AD2d 234, 237 [2001]).

Of course, the distinction between using a bicycle to engage in a sporting activity and using a bicycle for some other purpose will sometimes be elusive. It is important to draw that line, however, because " '[e]xtensive and unrestricted application of the doctrine of primary assumption of the risk to tort cases generally represents a throwback to the former doctrine of contributory negligence, wherein a plaintiff's own negligence barred recovery from the defendant' " (*Trupia v Lake George Cent. School Dist.*, 62 AD3d 67, 69 [3d Dept 2009], quoting *Pelzer v Transel El. & Elec. Inc.*, 41 AD3d 379, 381 [2007]). That tendency is illustrated by the appellants' briefs in this case, which repeatedly emphasize that the plaintiff was riding too closely behind Deutch. That argument is misplaced, since the issue of whether the plaintiff was following too closely, or otherwise acted negligently, is a matter of comparative fault, which must be determined by the factfinder at trial and not as a matter of law at the summary judgment stage (*see* CPLR 1411; *Roach v Szatko*, 244 AD2d 470, 471 [1997]; *Cohen v Heritage Motor Tours*, 205 AD2d 105 [1994]).

In sum, it cannot be said, as a matter of law, that merely by choosing to operate a bicycle on a paved public roadway, or by engaging in some other form of leisure activity or exercise such as walking, jogging, or roller skating on a paved public roadway, a plaintiff consents to the negligent maintenance of such roadways by a municipality or a contractor. Adopting such a rule could have the arbitrary effect of eliminating all duties owed to participants in such leisure or exercise activities, not only by defendants responsible for road maintenance, but by operators of motor vehicles and other potential tortfeasors, as long as the danger created by the defendant can be deemed inherent in such activities. We decline to construe the doctrine of primary assumption of risk so expansively.

For the foregoing reasons, the appellants failed to make a prima facie showing that the primary assumption of risk doctrine is applicable to the activity in which the plaintiff was engaged at the time of her accident. Thus, the Supreme Court properly denied the defendants' motions for summary judgment dismissing the complaint and all cross claims insofar as asserted

against them and Deutch's cross motion for summary judgment dismissing the fourth-party complaint and all related cross claims insofar as asserted against him as barred by the doctrine of primary assumption of risk.

Moreover, the defendants failed to establish as a matter of law that the unbarricaded lip created by the road construction was not a "unique and . . . dangerous condition over and above the usual dangers that are inherent" (*Owen v R.J.S. Safety Equip.*, 79 NY2d 967, 970 [1992]) in the activity of bicycle riding on a paved roadway (*see Vestal v County of Suffolk*, 7 AD3d 613, 614 [2004] [plaintiff did not assume risk of being injured while riding bicycle on defective paved pathway where there were "no signs, chains, or barriers" present "to indicate that it was not suitable for bicycling"]; *see also Phillips v County of Nassau*, 50 AD3d 755 [2008]; *Berfas v Town of Oyster Bay*, 286 AD2d 466 [2001]).

The appellants' remaining contentions are without merit.

Accordingly, we affirm the order insofar as appealed from.

DILLON, SANTUCCI and BALKIN, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable by the appellants appearing separately and filing separate briefs.