■ JOAN PALLADINO, Respondent, v LINDENHURST UNION FREE SCHOOL DISTRICT, Appellant. [924 NYS2d 474]—

In an action to recover damages for personal injuries, etc., the defendant appeals from an order of the Supreme Court, Suffolk County (Molia, J.), entered April 16, 2010, which denied its motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, and the defendant's motion for summary judgment dismissing the complaint is granted.

The plaintiff's infant son, Carl Palladino (hereinafter the infant), was playing handball on the defendant's premises when he allegedly stepped on an improperly placed grate, sustaining personal injuries. The infant was aware of the condition of the grate, having seen it prior to the incident on the date of the accident and on a prior date when he last played handball in the same area.

The principle of primary assumption of risk extends to those risks associated with the construction of a playing field and any open and obvious condition thereon (*see Ziegelmeyer v United States Olympic Comm.*, 7 NY3d 893 [2006]; *Sykes v County of Erie*, 94 NY2d 912 [2000]; *Maddox v City of New York*, 66 NY2d 270 [1985]; *Brown v City of New York*, 69 AD3d 893 [2010]; *Manoly v City of New York*, 29 AD3d 649 [2006]; *Morlock v Town of N. Hempstead*, 12 AD3d 652 [2004]). Where, as here, the risks are known by or perfectly obvious to the player, he or she has consented to them, and the property owner has discharged its duty of care by making the conditions as safe as they appear to be (*see Turcotte v Fell*, 68 NY2d 432, 439 [1986]; *Morales v Coram Materials Corp.*, 64 AD3d 756, 758 [2009]; *Joseph v New York Racing Assn.*, 28 AD3d 105, 108 [2006]). The defendant demonstrated its prima facie entitlement to judgment as a matter of law by establishing that the infant assumed the risk of injury by voluntarily participating in the handball game despite his knowledge that doing so could bring him into contact with the open and obvious, improperly placed metal grate (*see Trevett v City of Little Falls*, 6 NY3d 884 [2006]; *Brown v City of New York*, 69 AD3d at 894; *Ribaudo v La Salle Inst.*, 45 AD3d 556 [2007]). In opposition, the plaintiff failed to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]).

In light of our determination, we need not address the merits of the parties' remaining contentions. Balkin, Austin and Sgroi, JJ., concur.

Skelos, J.P., concurs in the result, and votes to reverse the order and grant the defendant's motion for summary judgment

dismissing the complaint, with the following memorandum: While dismissal of the complaint as a matter of law based upon the doctrine of primary assumption of risk is compelled by this Court's precedent (*see e.g. Casey v Garden City Park-New Hyde Park School Dist.*, 40 AD3d 901 [2007]; *Manoly v City of New York*, 29 AD3d 649 [2006]; *Morlock v Town of N. Hempstead*, 12 AD3d 652 [2004]; *Gamble v Town of Hempstead*, 281 AD2d 391 [2001]), I write separately to express my view that the application of the doctrine under these circumstances is neither mandated by Court of Appeals precedent nor consonant with the narrow reach properly afforded the doctrine, as recently clarified by that Court.

In August 2007 the plaintiff's infant son, Carl Palladino, then 11 years old, was playing handball with two friends on courts open to the public at the Lindenhurst Senior High School. The property is owned and maintained by the defendant Lindenhurst Union Free School District. The infant was playing on the middle court, where, flush with the wall against which the handball was thrown, there were ventilation grates built into the top of a raised cement block. The grates allowed for airflow from the exterior to the interior of the school building. The ventilation grates were ordinarily secured with bars because vandals had been known to lift the grates and enter the crawl space below. However, the security bar on the subject grates had been removed, and one of the grates was improperly placed, such that it was lying partially on top of another properly placed grate, leaving a three-to-six-inch uncovered space between the edge of the cement block and the edge of the improperly placed grate. In the course of play, the infant stepped onto the improperly placed grate, causing the grate to cave in and the infant's leg to fall through the grate. The grate cut into the infant's leg, down to the bone, allegedly causing a wound seven inches long, which required 46 sutures. The infant had played handball on the subject courts more than five times before the day of his accident, and had noticed the presence of the ventilation grates. Two or more days before the accident, the infant had noticed the space created by the improperly placed grate. On the day of the accident, he warned his friends about the space, and told them to "be careful." Based upon this incident, the plaintiff commenced this action to recover damages, inter alia, for personal injuries, and the defendant moved for summary judgment on the ground, among others, that the action was barred by the doctrine of primary assumption of risk.

The absolute defense of assumption of risk was abolished by the enactment of CPLR 1411, which provides that, "[i]n any ac-

tion to recover damages for personal injury, . . . assumption of risk[ ] shall not bar recovery." Assumption of risk has nonetheless "survived as a bar to recovery" in cases involving sports and recreational activities, under the rationale that "by freely assuming a known risk, a plaintiff commensurately negates any duty on the part of the defendant to safeguard him or her from the. risk" (*Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]; *see Turcotte v Fell*, 68 NY2d 432, 438-439 [1986]; *Cotty v Town of Southampton*, 64 AD3d 251, 254 [2009]). The Court of Appeals has recently acknowledged, however, that this consent-based theory is a "highly artificial construct," which has led to "a renaissance of contributory negligence replete with all its common-law potency" (*Trupia*, 14 NY3d at 395). The Court has, therefore, instructed that application of the doctrine "must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (*Trupia*, 14 NY3d at 395). While the Court was concerned in *Trupia* with a different aspect of the doctrine, namely, the types of activities falling within its ambit, the Court's recognition of the tension between primary assumption of risk and the law of comparative causation prescribes prudent application of the doctrine generally.

With these new admonitions in mind, I turn to the case currently before this Court, which requires us to consider the precise risks to which the infant consented by participating in what the plaintiff here does not dispute was an athletic activity within the purview of the doctrine. "[B]y engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *see Brown v City of New York*, 69 AD3d 893 [2010]; *Cotty v Town of Southampton*, 64 AD3d at 253; *Morlock v Town of N. Hempstead*, 12 AD3d 652 [2004]). This includes risks related to the construction of the playing surface or space (*see Ziegelmeyer v United States Olympic Comm.*, 7 NY3d 893 [2006]; *Sykes v County of Erie*, 94 NY2d 912 [2000]; *Maddox v City of New York*, 66 NY2d 270, 277 [1985]; *Cotty v Town of Southampton*, 64 AD3d at 254). While a premises owner owes a duty to exercise due care to make the conditions of the playing surface " 'as safe as they appear to be,' " if " 'the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty' " (*Morgan*, 90 NY2d at 484, quoting *Turcotte v Fell*, 68 NY2d at 439; *see Bendig v Bethpage Union Free School Dist.*, 74 AD3d 1263, 1264 [2010]; *Brown v City of New York*, 69 AD3d 893, 893 [2010]).

Under these principles, this Court has generally applied the doctrine of primary assumption of risk where plaintiffs knew about the particular condition of the playing surface which caused the accident or contributed to the injuries, and elected to play on that surface anyway (*see e.g. Casey v Garden City Park-New Hyde Park School Dist.*, 40 AD3d 901 [2007] [hole in the surface of a basketball court 1½ feet wide and 2 inches deep]; *Manoly v City of New York*, 29 AD3d 649 [2006] [raised manhole cover on soccer field, and surrounding fence that was in disrepair]; *Morlock v Town of N. Hempstead*, 12 AD3d 652 [2004] [cracks and holes in surface of cement hockey rink]; *Ciocchi v Mercy Coll.*, 289 AD2d 362 [2001] [badminton poles stored in corner of gym while it was being used for football game]).

The Court of Appeals, however, has recognized that "for purposes of determining the extent of the threshold duty of care, knowledge plays a role but inherency is the sine qua non" (*Morgan*, 90 NY2d at 484). In *Morgan*, the plaintiff was injured when his bobsled ran through an opening in the wall of the exit chute of the bobsled run, which was designed to facilitate the rapid removal of sleds during competition (*id.* at 479-481). The Court held that the defendant did not owe the plaintiff a duty of care because the plaintiff had assumed a "sufficiently inherent" risk (*id.* at 486).

In *Sykes v County of Erie* (94 NY2d at 913), where the plaintiff injured his knee when he stepped into a "recessed drain" while playing basketball on an outdoor court, the Court held that "the risks of playing upon an irregular surface are inherent in outdoor basketball activities." Because this condition of the court was "open and obvious," the Court concluded, the plaintiff assumed the inherent risk (*id.* at 913). Similarly, the risk of colliding with a pole supporting a basketball backboard, which was openly and obviously proximate to the court on which the plaintiff was playing, was "inherent in playing on that court" (*Trevett v City of Little Falls*, 6 NY3d 884, 885 [2006]). The doctrine was also held to be applicable to a case where the plaintiff, an Olympic speedskater, who was aware of the exact manner in which safety pads had been set up on the boards surrounding the rink, fell in such a way that her feet lifted the pads, causing her hip to directly strike the boards (*see Ziegelmeyer v United States Olympic Comm.*, 7 NY3d at 894; *see also Maddox*, 66 NY2d at 274-275 [the plaintiff, a professional baseball player, assumed the risk related to wet and muddy condition of baseball field]; *Scaduto v State of New York*, 86 AD2d 682 [1982], *affd for reasons stated below* 56 NY2d 762 [1982] [the plaintiff softball player assumed the risk arising from the presence of a

ditch near the third-base line, which was necessary for drainage of field]).

In contrast, in *Siegel v City of New York,* a companion case to *Morgan,* in which the plaintiff snagged his foot in a ripped net dividing indoor tennis courts, the doctrine of primary assumption of risk was not applicable as a matter of law (*see Morgan,* 90 NY2d at 489). While the Court concluded that nets separating indoor tennis courts were "inherently part of the playing" at such sport facilities, "a torn or allegedly damaged or dangerous net—or other safety feature—is by its nature not automatically an inherent risk of a sport as a matter of law for summary judgment purposes" (*id.* at 488). The Court continued: "[B]ecause a torn net is not an 'inherent' part of the game of tennis in and of itself, [the plaintiff] should not be deemed legally to have assumed the risk of injuries caused by his tripping over it. Our precedents do not go so far as to exculpate sporting facility owners of this ordinary type of alleged negligence" (*id.* at 488-489). Accordingly, as "a distinctive, separate duty continue[d] to be operative," the defendant was not entitled to summary judgment (*id.* at 479). Significantly, the plaintiff's deposition testimony in that case "showed that he had known for over two years that the side divider net was ripped" (*id.* at 482).

Thus, the Court of Appeals has applied the *doctrine of primary* assumption of risk to irregular surfaces or features in playing spaces that existed as they were designed. However, the Court refused, in *Siegel,* to apply the doctrine as a matter of law, where an inherent feature of a playing surface or space was itself defective, even though the plaintiff was aware of the defect. The automatic negation of a landowner's duty in such circumstances would give landowners license to allow properties, upon which sporting and recreational activities are held, to fall into disrepair. Indeed, in *Sykes,* the Court observed: "Although the doctrine of assumption of risk does not exculpate a landowner from liability for ordinary negligence in maintaining a [*sic*] premises, there is no evidence that the drain was defective or improperly maintained" (*Sykes,* 94 NY2d at 913). Similarly, the Court noted in *Morgan* that the plaintiff's accident was "not the result of any demonstrable defect in the design of the bobsled course itself" (*Morgan,* 90 NY2d at 486). In *Ziegelmeyer,* the Appellate Division, Third Department, likewise noted that the record did not establish that the safety pads surrounding the rink "were either damaged or defective," and it was demonstrated that "falling speedskaters often strike the pads in such a fashion as to cause the pads to move out of position on impact" (*Ziegelmeyer v United States Olympic Comm.,* 28 AD3d 1019, 1020 [2006], *affd* 7 NY3d 893 [2006]).

Therefore, the doctrine of primary assumption of risk, "as defined by the Court of Appeals, does not extend so far" as to provide that "a voluntary participant in a sport or recreational activity consents to *all* defects in a playing field so long as the defects are either known to the plaintiff or open and obvious" (*Simmons v Saugerties Cent. School Dist.*, 82 AD3d 1407, 1409 [2011]). Rather, while some known or open and obvious conditions of a playing surface or space may be inherent in a sport, not all such conditions can be considered risks that are inherent (*see Morgan*, 90 NY2d at 488-489; *Owen v R.J.S. Safety Equip.*, 79 NY2d 967, 970 [1992] [where expert affidavit indicated that the contour of a racetrack's retaining wall, the design of its guardrail, and the placement of barrels near guardrail were "unique and created a dangerous condition over and above the usual dangers that are inherent in the sport," a question of fact existed as to whether the plaintiff should be deemed to have assumed risk]; *Simmons v Saugerties Cent. School Dist.*, 82 AD3d 1407 [2011]; *Ryder v Town of Lancaster*, 289 AD2d 995 [2001] [triable issue of fact existed as to whether the defendant breached a continuing duty to keep a grass volleyball court, in which there existed a six-to-eight-inch deep hole, in good repair]; *Cruz v City of New York*, 288 AD2d 250 [2001] [the plaintiff did not assume risk where a heavy piece of equipment was negligently placed proximate to sidelines of football field]; *Allwood v CW Post Coll.*, 190 AD2d 704, 704 [1993] [question of fact as to assumption of risk where gymnasium floor used for basketball practice was warped, uneven, and contained puddles of water]; *Henig v Hofstra Univ.*, 160 AD2d 761, 762 [1990] [question of fact as to whether hole on football field was "typical of the terrain upon which the game of football is normally played" and, thus, as to whether plaintiff assumed risk]; *see generally Cotty v Town of Southampton*, 64 AD3d at 254 ["If an athlete is injured as a result of a defect in, or feature of, (the playing surface), the owner of the premises will be protected by the doctrine of primary assumption of risk as long as (the) risk presented by the condition is inherent in the sport"]). While a plaintiff cannot "reasonabl[y] expect[ ]" an optimal playing surface or space and, thus, the defendant does not have a duty to provide one (*Turcotte v Fell*, 68 NY2d at 437), the plaintiff might reasonably expect that certain ordinary defects in the features of the playing surface will be repaired.

Here, even if the risk of injury arising from the presence of ventilation grates on the handball court were "inherent in playing on that court" (*Trevett v City of Little Falls*, 6 NY3d at 885), the grates were not in their proper condition, and may have unreasonably increased the risk of injury. The defective grate

which collapsed when the plaintiff stepped on it, like the ripped divider net in *Siegel*, was not "automatically" an " 'inherent' part of the game . . . in and of itself" (*Morgan*, 90 NY2d at 488). "Rather, it may qualify as and constitute an allegedly negligent condition occurring in the ordinary course of any property's maintenance[,] . . . implicat[ing] typical comparative negligence principles" (*id*. at 488).

Accordingly, while the result reached in the present case is consistent with this Court's precedent, it is my view that the expansive interpretation adopted by this Court of the risks to which an individual may properly be deemed to consent is not mandated by Court of Appeals' precedent, and, is otherwise unwarranted. This is particularly so in light of the Court of Appeals' recent acknowledgment of the potential for the broad use of the doctrine of primary assumption of risk to erode the legislatively created law of comparative causation. Thus, while I concur in the result reached herein, I do so only under constraint of this Court's precedent.