Ninivaggi v County of Nassau (2019 NY Slip Op 08568)





Ninivaggi v County of Nassau


2019 NY Slip Op 08568


Decided on November 27, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 27, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JOHN M. LEVENTHAL
ROBERT J. MILLER
JOSEPH J. MALTESE, JJ.


2016-08990
2016-10228
 (Index No. 348/13)

[*1]Michael Ninivaggi, etc., et al., appellants, 
v
County of Nassau, defendant, Merrick Union Free School District, respondent.


Molod Spitz & DeSantis, P.C., New York, NY (Marcy Sonneborn and Salvatore J. DeSantis of counsel), for appellants.
Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, Uniondale, NY (Kathleen D. Foley of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for personal injuries, etc., the plaintiffs appeal from (1) an order of the Supreme Court, Nassau County (Leonard D. Steinman, J.), dated August 3, 2016, and (2) a judgment of the same court entered September 2, 2016. The order granted the motion of the defendant Merrick Union Free School District for summary judgment dismissing the complaint insofar as asserted against it. The judgment, upon the order, is in favor of the defendant Merrick Union Free School District and against the plaintiffs dismissing the complaint insofar as asserted against it.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is affirmed; and it further,
ORDERED that one bill of costs is awarded to the defendant Merrick Union Free School District.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
The infant plaintiff allegedly was injured when he and a friend were playing catch with a football on a multipurpose athletic field on the premises of an elementary school owned by the defendant Merrick Union Free School District (hereinafter the district). The injury occurred when the infant plaintiff stepped into a "depression" or "hole" on the grassy field, lost his balance, and fell. The depth of the depression was variously described by the plaintiffs as being two-to-three inches, three-to-four inches, and five inches. The infant plaintiff, who was 14 years old when he was injured, was an experienced football player, had previously played on the field, and admitted that he was familiar with the condition of the field.
The infant plaintiff, by his mother, and his mother suing derivatively, commenced this action, inter alia, to recover damages for personal injuries. After discovery was complete, the district moved for summary judgment dismissing the complaint insofar as asserted against it on the ground, among others, that the plaintiffs' claims were barred by the doctrine of primary assumption of risk. The Supreme Court granted the district's motion, and a judgment was entered dismissing the complaint insofar as asserted against the district. The plaintiffs appeal.
Pursuant to the doctrine of primary assumption of risk, a voluntary participant in a sporting or recreational activity "consents to those commonly appreciated risks [that] are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484). The doctrine applies to inherent risks related to the construction of the playing field or surface and "encompasses risks involving less than optimal conditions" (Bukowski v Clarkson Univ., 19 NY3d 353, 356; see Ziegelmeyer v United States Olympic Comm., 7 NY3d 893, 894; Sykes v County of Erie, 94 NY2d 912, 913; Maddox v City of New York, 66 NY2d 270, 277).
Here, the district established its prima facie entitlement to judgment as a matter of law on the basis of primary assumption of the risk. The plaintiffs described the grass field on which the accident occurred as "choppy," "wavy," and "bumpy," with several depressions. In other words, the topography of the grass field on which the infant plaintiff was playing was irregular. The risks posed by playing on that irregular surface were inherent in the activity of playing football on a grass field (see Sykes v County of Erie, 94 NY2d 912; Morgan v State of New York, 90 NY2d 471; Maddox v City of New York, 66 NY2d at 274-275). Moreover, the infant plaintiff's testimony demonstrated that he was aware of and appreciated the inherent risks, and that the irregular condition of the field was not concealed (see Bukowski v Clarkson Univ., 19 NY3d at 357).
Like our dissenting colleague, we acknowledge the Court of Appeals' admonition that the doctrine of primary assumption of risk "does not exculpate a landowner from liability for ordinary negligence in maintaining a premises" (Sykes v County of Erie, 94 NY2d at 913; see Custodi v Town of Amherst, 20 NY3d 83, 89; Cotty v Town of Southampton, 64 AD3d 251, 257). Thus, the doctrine does not necessarily absolve landowners of liability where they have allowed certain defects, such as a hole in a net in an indoor tennis court, to persist (see Morgan v State of New York, 90 NY2d at 488). In this case, we do not determine the doctrine's applicability to defects similar to that of a hole in an indoor tennis net, as there is a distinction between accidents resulting from premises having fallen into disrepair and those resulting from natural features of a grass field (see Bukowski v Clarkson Univ., 19 NY3d at 357). As to the condition presented on the facts of this case, application of the doctrine of primary assumption of risk is appropriate (see id.; Sykes v County of Erie, 94 NY2d 912; Morgan v State of New York, 90 NY2d 471; Maddox v City of New York, 66 NY2d at 274-275).
Accordingly, we affirm the judgment.
BALKIN, J.P., LEVENTHAL and MILLER, JJ., concur.
MALTESE, J., dissents, and votes to reverse the judgment, deny the motion of the defendant Merrick Union Free School District for summary judgment dismissing the complaint insofar as asserted against it, and reinstate the complaint insofar as asserted against that defendant, with the following memorandum:
In 1975, the Legislature enacted CPLR 1411, which eliminated contributory negligence and assumption of the risk as absolute bars to recovery in most cases, by substituting comparative negligence as the norm.
A participant in a sporting or recreational activity does not automatically assume all the risks of injury while utilizing a sports or recreational facility that is not properly maintained for foreseeable users. The owner of a sports or recreational facility has a duty to maintain those premises in a reasonably safe condition for its foreseeable users. If the owner maintains the premises [*2]in a less than optimal condition that is nonetheless used in an ordinary manner by foreseeable users, both the owner and the user may each bear some comparative fault if an injury occurs to a person using the facility.
Under the doctrine of primary assumption of risk, a voluntary participant in a sporting activity "is deemed to have consented to apparent or reasonably foreseeable consequences of engaging in the sport; the landowner need protect the plaintiff only from unassumed, concealed, or unreasonably increased risks, thus to make conditions as safe as they appear to be" (Manoly v City of New York, 29 AD3d 649, 649 [2d Dept 2006]).
While this Court has held that the doctrine of primary assumption of risk is a defense to personal injury causes of action based upon participation in sporting or recreational activities, it is not an absolute bar to recovery where the property owner may have some liability for failure to maintain the premises in a reasonably safe condition and fails to warn users of those defects. The threshold question with respect to any premises liability cause of action is whether the owner or possessor of the land (or building) breached the duty to use reasonable care to keep the premises in a reasonably safe condition for the protection of all persons whose presence is reasonably foreseeable (see PJI 2:90).
Here, the 14-year-old infant plaintiff and his friend were tossing a football around on a school ballfield owned by the defendant Merrick Union Free School District (hereinafter the district). The area where they were playing served as a joint outfield to three baseball fields. The infant plaintiff tripped in a hole while running to catch the football, causing him to fall on his left arm, which was fractured as a result of the fall.
The infant plaintiff and his mother alleged that the ballfield was not in a reasonably safe condition in that the outfield portion of the baseball field had several holes in it, which they described as a choppy and wavy condition that was hidden by grass. At a hearing held pursuant to General Municipal Law § 50-h, the infant plaintiff testified that the depression in which he fell was 18 inches long, 6 inches wide, and approximately 5 inches deep. He also testified that he had played on the field when he was a student at the school and that he knew of the field conditions before playing on the field on the day of the accident.
The Supreme Court reluctantly dismissed the complaint insofar as asserted against the district as a matter of law, stating that it was "constrained" to follow the precedents of the Appellate Division, Second Department, concerning the doctrine of primary assumption of risk and further stated: "[E]vidence was presented from which it could be concluded that the District failed to even attempt to properly maintain the field to ensure that it was not hazardous to the children and members of the community that were welcomed to play on it. What incentive does the District have to ensure that future Michaels are not similarly injured from its alleged failure to provide a safe ballfield upon which the children from Merrick can play (besides shame)? But like Justice Skelos [in Palladino v Lindenhurst Union Free School Dist. (84 AD3d 1194 [2d Dept 2011])], this court is constrained to follow the Second Department precedents." However, the cases that the Supreme Court was "constrained" to follow (see e.g. Casey v Garden City Park-New Hyde Park School Dist., 40 AD3d 901 [2d Dept 2007]; Manoly v City of New York, 29 AD3d 649 [2d Dept 2006]; Morlock v Town of N. Hempstead, 12 AD3d 652 [2d Dept 2004]; Gamble v Town of Hempstead, 281 AD2d 391 [2d Dept 2001]), should not have been dismissed at the summary judgment stage. Those cases should have gone to trial, where a jury or a judge as the trier of fact would have reviewed the evidence and specific circumstances of each accident.
Some of the cases from this Court have expanded the doctrine of primary assumption of risk in cases involving activities played upon grass or dirt surfaces. In Tinto v Yonkers Bd. of Educ. (139 AD3d 712 [2d Dept 2016]), a young boy playing a non-school-sponsored pick-up game of football with friends on a grassy field stepped into a large hole and was injured. This Court reversed the Supreme Court's order denying the defendant's summary judgment motion, finding that the doctrine of primary assumption of risk applied because the hole was open and obvious and clearly visible and known to the plaintiff. This is the same argument made by the district herein.
Recently, in a case with a similar set of facts, two Justices of this Court, in a concurrence on constraint, found that this Court's precedents have expanded the doctrine of primary assumption of risk in cases where the plaintiffs were injured while engaged in sporting activities on public sports facilities. In Philius v City of New York (161 AD3d 787 [2d Dept 2018], lv granted 2018 NY Slip Op 80737[U] [2d Dept 2018], appeal withdrawn 32 NY3d 1108), the plaintiff was injured while playing basketball on an outdoor court that had fallen into a state of disrepair, with deep, long-persisting cracks in the surface of the basketball court. Justice Connolly, joined in her concurrence by Justice Austin, observed that, although the primary assumption of risk doctrine encompasses risks that involve sub-optimal conditions, applying this doctrine where a landowner has "unreasonably allowed a sporting venue to fall into a state of disrepair is incompatible with the theoretical and pragmatic rationales behind the doctrine" (id. at 796). They further pointed out that this Court has given too much deference to the doctrine of primary assumption of risk to, in effect, obviate the duty of defendant landowners to inspect and repair their sports facilities and otherwise maintain them in a reasonably safe condition. While this Court directed dismissal of the plaintiffs' complaint, it granted leave to appeal to the Court of Appeals, but interestingly, the defendant New York City Housing Authority resolved that appeal (presumably with a settlement), and the appeal was withdrawn (see id.).
Earlier, in 2011, in Palladino v Lindenhurst Union Free School Dist. (84 AD3d at 1199), a former colleague, Justice Skelos, concurred on constraint in an action where an 11-year-old boy playing handball on school property was injured when he stepped on an improperly placed grate.
The threshold issue in any premises liability cause of action is whether the defendants have breached their duty to maintain their premises in a reasonably safe condition and, if not, what was the comparative negligence of the plaintiff and the defendant landowner. By directing dismissal of these actions based upon the doctrine of primary assumption of risk, this Court may have thwarted the determination of this threshold issue where the determination should have been made by a trier of fact.
Yet, this Court and the Court of Appeals have not always held that the primary assumption of risk defense relieves the landowner from the duty to reasonably maintain its sports and recreation facilities. In Henig v Hofstra Univ. (160 AD2d 761 [2d Dept 1990]), a football player was injured during play when he stepped into a hole several feet wide and several inches deep. This Court held that "we cannot say, as a matter of law, that a hole with the dimensions described by the plaintiff . . . must necessarily be considered to be representative of the various hazards to which football players normally expose themselves . . . so as to constitute a risk which the plaintiff could or should have foreseen . . . [in] addition to those risks which are admittedly unavoidable in . . . playing [the] sport. This question should be decided by the jury, which may take into account the magnitude of the hole, its location, and all other relevant circumstances" (id. at 762-763).
The Court of Appeals has held that "[w]ith the enactment of the comparative negligence statute . . . assumption of risk is no longer an absolute defense" (Turcotte v Fell, 68 NY2d 432, 438 [1986]). Instead, the doctrine of assumption of risk "has been described in terms of the scope of duty owed to a participant" in a sporting or recreational activity (see Custodi v Town of Amherst, 20 NY3d 83, 87 [2012]). The Pattern Jury Instructions include an explanation of the relationship between assumption of the risk and comparative negligence: "The law provides that where the defendant owes a duty of reasonable care to the (plaintiff, decedent), but the (plaintiff, decedent) voluntarily engages in an activity involving a risk of harm and the (plaintiff, decedent) knows and fully understands, or should have known and fully understood, the risk of harm, the plaintiff's damages must be reduced by the extent to which those damages were caused by the (plaintiff's, decedent's) own conduct" (PJI 2:55; see CPLR 1411).
The Court of Appeals has noted that "[w]e have not applied the doctrine [of assumption of risk] outside of this limited context [of facilitating participation in athletic activities] and it is clear that its application must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395 [2010]). A person who chooses to engage in such an athletic activity "consents to [*3]those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Custodi v Town of Amherst, 20 NY3d at 88). "[P]articipants are not deemed to have assumed risks resulting from the reckless or intentional conduct of others, or risks that are concealed or unreasonably enhanced" (Custodi v Town of Amherst, 20 NY3d at 88).
The Pattern Jury Instructions outline the standard of care for an owner or possessor's liability for a condition or use of a premises. An owner or possessor of property "has a duty to use reasonable care to keep the premises in a reasonably safe condition for the protection of all persons whose presence is reasonably foreseeable" (PJI 2:90). "[A]ssumption of the risk does not exculpate a landowner from liability for ordinary negligence in maintaining a premises'" (Custodi v Town of Amherst, 20 NY3d at 89, quoting Sykes v County of Erie, 94 NY2d 912, 913 [2000]). Yet, when these cases are dismissed at the summary judgment stage, jurors are not given those instructions, which should also be applied by the motion courts.
Other departments of the Appellate Division have not dismissed cases at the summary judgment stage where there was a triable issue of fact concerning the defendants' maintenance of their sporting facilities. In Simmons v Saugerties Cent. School Dist. (82 AD3d 1407, 1409 [3d Dept 2011]), the plaintiff, a high school student, was injured while playing touch football during recess when he stepped into a large hole in the grassy area on which he was playing. The Third Department held that the plaintiff's allegedly long-standing knowledge of the hole and its open and obvious nature did not "bar inquiry into whether the allegedly dangerous condition resulted from [the] defendant's negligent maintenance of its property" (id. at 1409). In Ryder v Town of Lancaster (289 AD2d 995 [4th Dept 2001]), the plaintiff was playing volleyball on a grass court maintained by one of the defendants. He was injured when he stepped into a six- to eight-inch-deep hole in the court (see id. at 995). The Fourth Department found that there were triable issues of fact as to whether the defendant "breached a continuing duty to keep the grass in good repair" (id. at 995-996).
By obviating the determination of the threshold issue of whether landowners have breached their duty to maintain their premises in a reasonably safe condition, the Second Department has removed landowners' incentive to inspect and repair their premises regardless of whether they were previously put on notice by the regular use of these sports facilities by young people.
In this case, the school's head custodian testified at his deposition that a grounds crew cut the grass on the baseball fields once per week from March through November, but did not seed or fertilize the grass. The custodian testified that he inspected the fields by just walking around them, but did not maintain records of his inspections. If there was a problem with the baseball fields, he would inform his boss and let his boss address the problem. He testified that, if he observed a condition that was 18 inches long, 6 inches wide, and 4 inches deep, he would contact his boss about it, but that he never had a conversation with his boss about such a condition on the fields. The head custodian also stated that he never received a complaint about the conditions on the fields. Yet, the plaintiff mother testified at a hearing pursuant to General Municipal Law § 50-h that the poor condition of the ballfields was discussed at Parent-Teacher Association (PTA) meetings and at Board of Education meetings that occurred before the accident. When presented with the photographs depicting the condition taken by the plaintiffs, the head custodian testified that he did not see any holes that needed repair. Additionally, he testified that he never placed any warning cones in the fields. These self-serving statements should be presented before a trier of fact rather than being the basis of a summary dismissal of the case.
Counsel for the district here argued that, based upon this Court's precedent, we are bound by the principle that a plaintiff who knows that an uneven surface exists on a playing field and nonetheless proceeds to play a sport upon that playing surface assumes the risk of any personal injury that may be sustained by reason of tripping upon that uneven surface, regardless of the extent of that surface condition. By relying on the primary assumption of risk defense without the trier of fact making a finding of whether the sports facilities were in a reasonably safe condition, the district relies on the law of tough luck. The essence of the district's argument is that the users know the [*4]district does not adequately maintain its ballfields in a reasonably safe condition, so they should not play upon them. And if users choose to do so, as opposed to sitting around playing video games, they do so at their own risk.
The majority has characterized the topography of the outfield as the natural features of a grass field. That is not correct. The photographic evidence in this case is clear—this was not a de minimis uneven surface. The joint outfield of these three baseball fields has several depressions which could have very easily been maintained with a few wheelbarrows of dirt and grass seed. Indeed, when the infant plaintiff and his mother returned to the scene in order to take photographs of the hole which caused him to fall and break his left arm, he found not one, but three similar holes, shrouded with grass. He selected the one he believed caused his fall. Yet, instead of acknowledging the faulty condition of its field, the district has argued that the plaintiffs cannot identify the exact location of the accident because the infant plaintiff was not initially certain which specific hole he fell in—as there were several in the poorly maintained field.
This is not a pothole case where, due to the number of miles of roadway, the municipality may not know of a pothole's existence without prior notice. This is a ballfield belonging to the district that is used by numerous young students and others such as the Merrick Little League, which allegedly maintained the infield, but not the outfield! That admittedly was the responsibility of the district's maintenance crew.
Here, it was not a heavy burden for the district to maintain the ballfield in a reasonably safe condition to protect foreseeable users from injury. Although the infant plaintiff admittedly knew that the ballfield was in a state of disrepair, and although an injured person's knowledge plays a role in determining the applicability of the doctrine of primary assumption of risk, the inherency of the risk in the activity "is the sine qua non" (Morgan v State of New York, 90 NY2d at 484; see Simmons v Saugerties Cent. School Dist., 82 AD3d at 1409).
Serious injury incurred when attempting to play "around" numerous holes and depressions is not an ordinary risk of playing ball on a field (see Simmons v Saugerties Cent. School Dist., 82 AD3d at 1409; Ryder v Town of Lancaster, 289 AD2d 995; see also Connolly v Willard Mtn., Inc., 143 AD3d 1148). The district should not be allowed to hide behind the alleged lack of formal written notice of this dangerous condition. The district knew or should have known of the dangerous condition through a proper inspection of the ballfield, which would have allowed ample time to repair it. The trier of fact should determine whether the district unreasonably increased the risks inherent in the activity by failing to maintain the ballfield.
Here, the majority has made a factual determination that the defective condition of the ballfield was open and obvious and, rather than allow a jury to assess the extent of that danger, the majority affirms the summary judgment dismissal by the Supreme Court on constraint of this Department's precedents.
I agree with the legal commentators who have written on this inconsistent use of the primary assumption of risk defense concluding that the Court of Appeals should clarify this area of the law (see Robert S. Kelner and Gail S. Kelner, Play Ball, But Beware the Cracks, NYLJ, Sept. 25, 2018 at 3, col 1; Danielle Clout, Assumption of Risk in New York: The Time Has Come to Pull the Plug on This Vexatious Doctrine, 86 St John's L Rev 1051 [2012]).
Accordingly, I vote to reverse the judgment, deny the district's motion for summary judgment dismissing the complaint insofar as asserted against it, reinstate the complaint insofar as asserted against the district, and restore this action to the trial calendar.
ENTER:
Aprilanne Agostino
Clerk of the Court