Philius v City of New York (2018 NY Slip Op 03161)





Philius v City of New York


2018 NY Slip Op 03161


Decided on May 2, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
SHERI S. ROMAN
FRANCESCA E. CONNOLLY, JJ.


2015-11913
 (Index No. 20459/13)

[*1]Joel Philius, respondent, 
v
City of New York, defendant, New York City Housing Authority, appellant.


Conway, Farrell, Curtin & Kelly, P.C., New York, NY (Herzfeld & Rubin, P.C. [Miriam Skolnik and Sharyn Rootenberg], of counsel), for appellant.
Krentsel & Guzman, LLP (Michael H. Zhu, Esq., P.C., New York, NY, of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for personal injuries, the defendant New York City Housing Authority appeals from an order of the Supreme Court, Kings County (Francois A. Rivera, J.), dated October 30, 2015, which denied its motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against it.
ORDERED that the order is reversed, on the law, with costs, and the motion of the defendant New York City Housing Authority for summary judgment dismissing the complaint and all cross claims insofar as asserted against it is granted.
On April 22, 2013, the plaintiff allegedly was injured while playing basketball on an outdoor basketball court owned by the defendants New York City Housing Authority (hereinafter NYCHA) and City of New York when he tripped on a crack in the surface of the court. Thereafter, the plaintiff commenced this action against NYCHA and the City. NYCHA moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against it, arguing, among other things, that the plaintiff's action was barred by the doctrine of primary assumption of risk. In the order appealed from, the Supreme Court denied NYCHA's motion, and NYCHA appeals.
"Pursuant to the doctrine of primary assumption of risk, a voluntary participant in a sporting or recreational activity consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation'" (Brown v Roosevelt Union Free Sch. Dist., 130 AD3d 852, 853, quoting Morgan v State of New York, 90 NY2d 471, 484; see Simone v Doscas, 142 AD3d 494). "Among the risks inherent in participating in a sport are the risks involved in the construction of the field, and any open and obvious conditions of the place where the sport is played" (Bryant v Town of Brookhaven, 135 AD3d 801, 802; see Ziegelmeyer v United States Olympic Comm., 7 NY3d 893, 894; Sykes v County of Erie, 94 NY2d 912, 913; Maddox v City of New York, 66 NY2d 270, 277; Galski v State of New York, 289 AD2d 195, 196; Welch v Board of Educ. of City of N.Y., 272 AD2d 469; see also Trevett v City of Little Falls, 6 NY3d 884, 885). The policy underlying the primary assumption of risk doctrine is "to facilitate free and vigorous participation in athletic activities" (Benitez v New York City Bd. of Educ., [*2]73 NY2d 650, 657; see Cotty v Town of Southampton, 64 AD3d 251, 254). The application of the doctrine "fosters these socially beneficial activities by shielding coparticipants, activity sponsors or venue owners from potentially crushing liability'" (Custodi v Town of Amherst, 20 NY3d 83, 88, quoting Bukowski v Clarkson Univ., 19 NY3d 353, 358; see Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395).
"It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (Maddox v City of New York, 66 NY2d at 278; see Shivers v Elwood Union Free Sch. Dist., 109 AD3d 977, 979; O'Connor v Hewlett-Woodmere Union Free Sch. Dist., 103 AD3d 862, 863). Awareness of risk is "to be assessed against the background of the skill and experience of the particular plaintiff" (Morgan v State of New York, 90 NY2d at 486 [internal quotation marks omitted]; see Maddox v City of New York, 66 NY2d at 278; Joseph v New York Racing Assn., 28 AD3d 105, 108). Participants are not deemed to have assumed risks that are concealed or unreasonably increased (see Custodi v Town of Amherst, 20 NY3d at 88; Morgan v State of New York, 90 NY2d at 485; Benitez v New York City Bd. of Educ., 73 NY2d at 658; Georgiades v Nassau Equestrian Ctr. at Old Mill, Inc., 134 AD3d 887, 889; Weinberger v Solomon Schechter Sch. of Westchester, 102 AD3d 675, 678). However, "[i]f the risks are known by or perfectly obvious to the player, he or she has consented to them and the property owner has discharged its duty of care by making the conditions as safe as they appear to be" (Brown v City of New York, 69 AD3d 893, 893; see Turcotte v Fell, 68 NY2d 432, 439; Joseph v New York Racing Assn., 28 AD3d at 108).
Here, NYCHA established its prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against it based upon the doctrine of primary assumption of risk. In support of its motion, NYCHA submitted, among other things, a transcript of the plaintiff's testimony from a General Municipal Law § 50-h hearing and a transcript of his deposition testimony, as well as photographs of the subject court. The plaintiff, who was 19 years old at the time of the accident and an experienced basketball player, testified that he "grew [up] playing on [the subject] court," and that he was aware of the presence of cracks in the surface of the court prior to his accident. The plaintiff also indicated that he was previously aware of the particular crack over which he tripped. When the plaintiff was asked during the General Municipal Law § 50-h hearing if he ever saw "what [his] foot got caught in before this happened," he responded, "[w]e knew where it was before when it happened."
Thus, NYCHA demonstrated that it did not violate its duty to exercise ordinary reasonable care to protect the plaintiff from unassumed, concealed, or unreasonably increased risks, and that the plaintiff assumed the risk of injury by voluntarily participating in a basketball game on the outdoor court despite his knowledge that doing so could bring him into contact with an open and obvious crack in the playing surface (see Joseph v New York Racing Assn., 28 AD3d at 108-109; McKey v City of New York, 234 AD2d 114, 115; see also Benitez v New York City Bd. of Educ., 73 NY2d at 658). We note that this Court has consistently applied the primary assumption of risk doctrine in cases involving similar known or open and obvious conditions in the playing surfaces of various types of courts (see Wilck v Country Pointe at Dix Hills Homeowners Assn., Inc., 111 AD3d 822, 823-824; Mendoza v Village of Greenport, 52 AD3d 788, 788-789; Casey v Garden City Park-New Hyde Park School Dist., 40 AD3d 901, 902; Sammut v City of New York, 37 AD3d 811, 812; Gamble v Town of Hempstead, 281 AD2d 391, 391-392; Smith v Village of Hempstead, 264 AD2d 413, 414; Cevetillo v Town of Mount Pleasant, 262 AD2d 517, 518; Retian v City of New York, 259 AD2d 684, 685; Paone v County of Suffolk, 251 AD2d 563, 564; Brown v City of New York, 251 AD2d 361; see also Palladino v Lindenhurst Union Free School Dist., 84 AD3d 1194, 1195).
In opposition to NYCHA's prima facie showing of entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against it based on the doctrine of primary assumption of risk, the plaintiff failed to raise a triable issue of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324).
Accordingly, the Supreme Court should have granted NYCHA's motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against it.
RIVERA, J.P. and ROMAN, JJ., concur.
CONNOLLY, J., concurs in the result, and votes to reverse the order and grant the motion of the New York City Housing Authority for summary judgment dismissing the complaint and all cross claims insofar as asserted against it, with the following memorandum, in which AUSTIN, J., concurs:
The doctrine of primary assumption of risk was never intended to allow a landowner to permit a recreational facility to fall into a neglectful state of disrepair, completely relieving it of any duty to sports participants. In the case at bar, the subject outdoor basketball court contained deep cracks that were long-persisting. While the plaintiff was casually performing a pre-game layup, his foot allegedly got caught in a deep crack, causing his foot to turn and fracture. The cracked condition of the basketball court was not a risk inherent in the sport of basketball and, in my view, under these circumstances, the doctrine of primary assumption of risk is not applicable.
However, this Court's precedent compels dismissal of the complaint, since the plaintiff was aware of the cracks on the court and voluntarily chose to play basketball at this location (see Palladino v Lindenhurst Union Free School Dist., 84 AD3d 1194, 1195; see also Wilck v Country Pointe at Dix Hills Homeowners Assn., Inc., 111 AD3d 822, 823; Casey v Garden City Park-New Hyde Park School Dist., 40 AD3d 901, 901-902).
Accordingly, although I concur in the result reached by my colleagues, I write separately to respectfully set forth my view that Court of Appeals' precedent dictates that the doctrine of primary assumption of risk should not be applied in this case.
I.
The plaintiff commenced this action against, among others, the defendant New York City Housing Authority (hereinafter NYCHA) to recover damages for injuries he sustained on April 22, 2013, when his foot allegedly got caught in a crack on a basketball court located at the Linden Houses, a public housing complex owned by NYCHA, located in Brooklyn.
At a hearing pursuant to General Municipal Law § 50-h and at his deposition, the plaintiff testified that, at the time of the accident, he was 19 years old, and that he remembered seeing cracks on the playing surface of the basketball court since when he began playing there at the age of seven. On April 22, 2013, the plaintiff was "shooting around" on the courts with four friends. At the time of the accident, no formal game of basketball was underway. The plaintiff dribbled toward the basket to perform a layup when his left foot got caught in a crack, causing his foot to turn and "snap." Later that day, the plaintiff went to the hospital and was diagnosed with a fracture, requiring surgery. The plaintiff identified the location of the accident on a photograph.
Patrick Butler, employed by NYCHA as Assistant Superintendent of the Linden Houses, testified at a deposition that he oversees maintenance at the property, which consists of 1,600 housing units in 19 residential buildings. The complex has four playgrounds and several basketball courts, with a number of hoops. Butler conceded that he was aware of cracks on the paved surface of the courts.
NYCHA moved for summary judgment dismissing the complaint insofar as asserted against it, arguing that the plaintiff assumed the risk of playing basketball on the cracked court. NYCHA also argued that the defect in the basketball court was trivial and that it had no notice of the alleged dangerous condition, but it has not raised these arguments on appeal.
In opposition, the plaintiff argued that he "did not assume the risk of having his foot stuck in a crack when playing basketball." The plaintiff submitted the affidavit of a licensed [*3]professional engineer, Nicholas Bellizzi, who opined that the cracked pavement, which he characterized as a "toe trap," constituted "a longstanding defective condition in a very advanced state of disrepair." Bellizzi opined that "[t]he advanced state of disrepair of the defect indicates that it had been in that defective condition for a minimum of several years prior to the date of this accident." In a supplemental affidavit, Bellizzi averred that he conducted a site inspection on October 14, 2015, after being informed that the pavement was in the same condition as on the date of the plaintiff's accident, and measured the crack as being one to three inches wide and one inch deep. Photographs annexed to Bellizzi's affidavit depict a gaping crack running through the pavement in the area beneath the hoop.
In reply, NYCHA argued that the "prominent and visible" nature of the cracked surface of the basketball court only supports its contention that the plaintiff voluntarily assumed "any risk of injury arising from the game."
The Supreme Court denied the motion, and NYCHA appeals.
II.
At common law, a plaintiff who contributed "in the slightest degree" to the happening of an accident was barred from recovering damages (Fitzpatrick v International Ry. Co., 252 NY 127, 134). "The rule [of contributory negligence] was extreme. The plaintiff who was guilty of only slight or trivial negligence was barred completely, even if the defendant was guilty of quite serious negligence" (Dan B. Dobbs, The Law of Torts § 199 [2000]). The doctrine of contributory negligence was premised upon "[t]he theory . . . that plaintiff's negligence was an intervening cause, which broke the causal connection between the defendant's negligent act and plaintiff's injury" (Arbegast v Board of Educ. of S. New Berlin Cent. School, 65 NY2d 161, 165).
Although similar to the rule of contributory negligence, the defense of assumption of the risk was premised upon a separate and distinct theory of a plaintiff's "agreement, express or implied, not to hold defendant responsible for the injury-causing act, negligent though it may have been, which resulted from plaintiff's entering into the activity with knowledge of its danger, or under circumstances from which it could be found that he or she should have had such knowledge" (id. at 165). Thus, a key factor under the common-law defense of assumption of the risk was the plaintiff's knowledge of the risk (see id.).
In 1975, New York, as part of a nationwide trend, abolished contributory negligence and formally adopted comparative negligence by enacting CPLR article 14-A, which provides, in relevant part: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages" (CPLR 1411 [emphasis added]). "The legislative history of article 14-A makes clear that a plaintiff's comparative negligence is no longer a complete defense to be pleaded and proven by the plaintiff, but rather is only relevant to the mitigation of plaintiff's damages and should be pleaded and proven by the defendant" (Rodriguez v City of New York, ___NY3d___, 2018 NY Slip Op 02287, *5 [2018]).
New York's comparative fault regime, a "pure" system of comparative fault (see Dan B. Dobbs, The Law of Torts § 201 [2000]), is of the most liberal variety, allowing a plaintiff to recover even where his or her percentage of fault exceeds the defendant's percentage of fault. Thus, a plaintiff who is 99% at fault can still recover 1% of his or her damages from a negligent defendant.
By contrast, some states have enacted "modified" systems of comparative fault, which permit a plaintiff to recover only where his or her percentage of fault does not exceed a specified threshold, typically precluding recovery for a plaintiff whose share of culpability equals or exceeds the defendant's share (see Dan B. Dobbs, The Law of Torts § 201 [2000]). Modified systems of comparative fault do not abolish contributory negligence (as in the case of pure comparative fault [*4]regimes), but merely lower a plaintiff's barrier to recovery (see Placek v City of Sterling Heights, 405 Mich 638, 661, 275 NW2d 511, 519). Before enacting CPLR article 14-A, the Governor of the State of New York vetoed proposed legislation that would have barred recovery for plaintiffs found to be more than 50% negligent (see 13th Ann Rep of Jud Conf, Part I, 1975 McKinneys Session Laws of NY at 1482).
Despite the express provision of CPLR 1411 that "the culpable conduct attributable to the claimant . . . including . . . assumption of risk, shall not bar recovery," the Court of Appeals has held that the doctrine of " primary' assumption of risk," applicable to sporting activities, survived the enactment of CPLR article 14-A (Turcotte v Fell, 68 NY2d 432, 438-439). Broadly speaking, the doctrine has found application in scenarios where sporting participants are injured by coparticipants (see id. at 440-441), where participants are injured by a design or condition in the physical playing field or recreational space (see Bukowski v Clarkson Univ., 19 NY3d 353, 356-357), and where spectators are injured as a result of their proximity to the game (see Akins v Glens Falls City School Dist., 53 NY2d 325, 327). "The assumption of risk doctrine applies where a consenting participant in sporting and amusement activities is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks'" (Bukowski v Clarkson Univ., 19 NY3d at 356, quoting Morgan v State of New York, 90 NY2d 471, 484). The Court of Appeals explained that, in the context of sporting events, "[r]isks . . . are incidental to a relationship of free association between the defendant and the plaintiff in the sense that either party is perfectly free to engage in the activity or not as he [or she] wishes" (Turcotte v Fell, 68 NY2d at 438-439). "Plaintiff's consent' is not constructive consent; it is actual consent implied from the act of the electing to participate in the activity" (id. at 439).
Thus, the Court of Appeals reasoned that the doctrine of primary assumption of risk was not extinguished by the enactment of comparative fault because the focus of the doctrine is not on the plaintiff's negligence, but on a finding that the defendant had completely performed any duty owed to the plaintiff, as signified by the plaintiff's voluntary participation in the activity (see id.; see also Morgan v State of New York, 90 NY2d at 485). Conceptualized this way, the doctrine of primary assumption of risk was said to embody a principle of "no duty" or "no negligence" on the part of the defendant (see Morgan v State of New York, 90 NY2d at 485 [" Without a breach of duty by the defendant, there is thus logically nothing to compare with any misconduct of the plaintiff'" quoting Prosser & Keeton, Torts § 68 at 496-497 (5th ed. 1984)]). Years later, in Trupia v Lake George Cent. School Dist. (14 NY3d 392), the Court of Appeals qualified this analysis, holding that while the "no duty" concept was "theoretically satisfying," the theory of implied consent "is a highly artificial construct," which, in reality, is simply "a result-oriented application of a complete bar to recovery" that was "precisely what the comparative negligence statute was enacted to avoid" (id. at 395). Given that "[t]he doctrine of assumption of risk does not, and cannot, sit comfortably with comparative causation," the Court posited that the most persuasive argument in favor of retaining the doctrine was its social utility, noting that "athletic and recreative activities possess enormous social value" (id.).
Nevertheless, the central concept underpinning the doctrine of primary assumption of risk is the plaintiff's voluntary consent "to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (Turcotte v Fell, 68 NY2d at 439). The risk of the activity must be "fully comprehended or perfectly obvious" in order for the plaintiff to impliedly consent (id.). Moreover, "a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d at 484 [emphasis added]). "[F]or purposes of determining the extent of the threshold duty of care, knowledge plays a role but inherency is the sine qua non" (id. [emphasis added]).
The requirement that the risk assumed must be "inherent" in the sport was demonstrated with clarity in Siegel v City of New York, a companion case decided with Morgan v State of New York (90 NY2d 471). In Siegel,
"This 60-year-old plaintiff was injured in 1992 when he tripped [*5]playing tennis at defendant Paerdegat Racquet Club in Brooklyn. Defendant City of New York owns the premises and leases them to Paerdegat. During a game, Siegel snagged his foot in a torn vinyl hem at the bottom of a net dividing the indoor tennis courts. He had been a member of the club for 10 years and played doubles tennis there once a week. His deposition testimony showed that he had known for over two years that the side divider net was ripped and that although he had never informed Paerdegat's management of the problem, other club members had" (id. at 482 [emphasis added]).
The Court of Appeals held that the defendant was not entitled to summary judgment based upon primary assumption of risk because "a torn net is not an inherent' part of the game of tennis in and of itself" (id. at 488).
In contrast, in Sykes v County of Erie (94 NY2d 912), while playing basketball on an outdoor court, the plaintiff "injured his knee when he stepped into a recessed drain near the free throw line" (id. at 913). The Court of Appeals held that the plaintiff assumed the risk of injury because "the risks of playing upon an irregular surface are inherent in outdoor basketball activities" (id.). However, critical to understanding Sykes is the Court of Appeals' statement that, "[a]lthough the doctrine of assumption of risk does not exculpate a landowner from liability for ordinary negligence in maintaining a premises, there is no evidence that the drain was defective or improperly maintained" (id. [emphasis added]; see Custodi v Town of Amherst, 20 NY3d 83, 89-90). Thus, since the net in Siegel was defective, and the drain in Sykes was not defective, these cases are consistent with one another.
While the plaintiff in the case at bar was also injured while playing basketball on a concededly irregular playing surface, unlike in Skyes, there is an abundance of evidence in the record from which a factfinder could conclude that the playing surface was in fact defective or improperly maintained. The plaintiff testified at his General Municipal Law § 50-h hearing and at his deposition that there had been cracks in the court for approximately 12 years. The plaintiff's expert averred that the subject crack was one to three inches wide and one inch deep. NYCHA's Assistant Superintendent conceded that he was aware of the cracks in the court. The basketball court in this case was in such a dilapidated condition that it was hardly suitable, if at all, for playing basketball, a sport that involves running, jumping, dribbling, and quick athletic movements. It cannot be said that playing on a court in this condition is "inherent" to the game of basketball.
In my view, whether a playing surface was in its designed condition, or whether it had fallen into disrepair, is a crucial distinguishing factor in determining whether the doctrine of primary assumption of risk is applicable (compare Siegel v City of New York, 90 NY2d 471, with Trevett v City of Little Falls, 6 NY3d 884, 885 [the plaintiff assumed the risk of colliding with the pole supporting the basketball backboard and rim, because "the risk of collision with the pole was inherent in playing on that court"], and Ziegelmeyer v United States Olympic Comm., 7 NY3d 893, 894 [the plaintiff speedskater assumed the risk where she "fell on the ice during practice and hit the boards surrounding the rink. Although safety pads had been placed on the boards, plaintiff fell in such a way that her feet lifted the pads, causing her hip to strike the boards directly"]). Indeed, "the Court of Appeals has applied the doctrine of primary assumption of risk to irregular surfaces or features in playing spaces that existed as they were designed" (Palladino v Lindenhurst Union Free School Dist., 84 AD3d at 1199 [Skelos, J., concurring on constraint] [emphasis added]).
While "[t]he primary assumption of risk doctrine also encompasses risks involving less than optimal conditions" (Bukowski v Clarkson Univ., 19 NY3d at 356), applying the doctrine of primary assumption of risk where a landowner has unreasonably allowed a sporting venue to fall into a state of disrepair is incompatible with the theoretical and pragmatic rationales behind the doctrine. To the extent that primary assumption of risk relies upon the plaintiff's implied consent to those "commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d at 484), a plaintiff's consent does not extend to uncommon risks, or to those risks that are not inherent in the [*6]sport or activity. Moreover, insofar as the doctrine of primary assumption of the risk was carried over after the enactment of comparative fault for public policy reasons (see Trupia v Lake George Cent. School Dist., 14 NY3d at 395), it does not make public policy sense to allow landowners who completely abdicate their duty to perform any kind of maintenance or repair on their property to gain the benefit of the defense (see Palladino v Lindenhurst Union Free School Dist., 84 AD3d at 1199 [Skelos, J., concurring on constraint] ["The automatic negation of a landowner's duty in such circumstances would give landowners license to allow properties, upon which sporting and recreational activities are held, to fall into disrepair"]). While athletics and recreation are socially valuable endeavors, society also has an interest in the safety of participants of those activities. Thus, insofar as one of the principal aims of tort law is to deter conduct that produces harm (see Dan B. Dobbs, The Law of Torts § 11 [2000]), it does not comport with public policy to preclude only sporting participants from suing landowners who have negligently allowed their properties to deteriorate—indeed, if the plaintiff had been a pedestrian who tripped while simply passing through the basketball court, he would be allowed to hold the defendant responsible for its negligence.
In my view, an over-emphasis on the plaintiff's knowledge of the alleged defect, rather than the inherency of the risk to the sport, represents the improper return to the reasoning of the separate and distinct pre-1975 common-law defense of assumption of the risk. This has resulted in a multitude of conflicting cases from the four Appellate Division Departments. For example, in Furnari v City of New York (89 AD3d 605), the First Department held that, while playing softball, the plaintiff "fell when he planted his foot to throw the ball. He claims that he fell as a result of an uneven playing surface caused by or concealed by a tar patch applied by defendant City . . . . This accident was caused by an unevenness in the field or playing surface, which is not inherent in the sport when it is played on an asphalt surface, which is presumably flat" (id. at 606-607 [citations omitted]). In Cronson v Town of N. Hempstead (245 AD2d 331), this Court noted that the plaintiff "fell after stumbling on a crack in a tennis court. He described the crack as being, to the best of his recollection, between one inch or one and one-half inches long, one-quarter to one-third of an inch wide, and about one-third of an inch deep. He did not see the crack prior to the accident. . . . Under the circumstances of this case, and considering that the claimed dangerous condition of the tennis court was allegedly unseen by the plaintiff, as well as by a representative of the defendant, we find that there is an issue of fact as to whether the doctrine of assumption of the risk applies" (id. at 331). In Clark v State of New York (245 AD2d 413), this Court stated that "[t]he claimant's decedent . . . was injured while playing basketball in a State park in Yorktown, New York. The trial court correctly concluded that the claimant's decedent did not assume the risk of an injury caused by a steep drop-off several inches from the edge of the playing area's asphalt surface since this created a dangerous condition over and above the usual dangers that are inherent in the sport" (id. at 413 [internal quotation marks omitted]). In Warren v Town of Hempstead (246 AD2d 536), this Court held that there were issues of fact where the plaintiff, who tripped on a crack in an outdoor basketball court, was aware of the crack but was not aware of its depth due to a sealant applied by the defendant. In Simmons v Saugerties Cent. School Dist. (82 AD3d 1407), the Third Department stated that where the "plaintiffs presented evidence that the hole, which was approximately a foot in diameter and a foot deep, had been in existence for at least 18 months prior to plaintiff's accident" during a game of touch football, "there [were] questions of fact regarding whether defendant's negligent maintenance of the [playing area] created a dangerous condition over and above the usual dangers that are inherent in the sport of touch football" (id. at 1409 [citations and internal quotation marks omitted]). Finally, in Ryder v Town of Lancaster (289 AD2d 995), the Fourth Department determined that primary assumption of risk did not apply where the plaintiff "stepped in a six- to eight-inch-deep hole while playing volleyball on a grass court maintained by defendant" (id. at 995).
On the other hand, in Williams v New York City Hous. Auth. (107 AD3d 530), the First Department found that the plaintiff assumed the risk where, "while playing basketball on an outdoor court, he tripped and fell over a large and highly visible crack on the court" (id. at 530-531). In Felton v City of New York (106 AD3d 488), the First Department held that the doctrine of assumption of risk warranted dismissal of the complaint where the plaintiff "an experienced basketball player who had played on the subject court on numerous occasions, was injured when, while heading toward the rim to take a shot, his ankle twisted and he heard his knee pop,' causing him to fall to the ground. Plaintiff observed that the court was cracked, repaired and uneven, which [*7]he believed to be the cause of his fall" (id. at 488). In LaSalvia v City of New York (305 AD2d 267), the First Department held that, where the plaintiff allegedly "tripped on a schoolyard pavement defect while playing an unsupervised game of touch football . . . on a day and time when school was not in session, the 22-year-old plaintiff assumed the risks inherent in the schoolyard touch football game, including any obvious risk posed by the irregular playing surface" (id. at 267). In Green v City of New York (263 AD2d 385), the First Department determined that "since plaintiff voluntarily
chose to play basketball on a court surface whose faulty condition was perfectly obvious, his injury, as a matter of law, cannot be held to be due to a violation of defendants' duty to exercise ordinary, reasonable care" (id. at 385). In McKey v City of New York (234 AD2d 114), the First Department held that the plaintiff "obviously knew or should have known that an open six-inch hole under the basket would present a hazard to any player on that court. Such risk of injury was the perfectly obvious' type of harm inherent in playing basketball on that court surface and one in which plaintiff, an experienced basketball player, consented to by electing to participate in the activity" (id. at 115, quoting Turcotte v Fell, 68 NY2d at 439). In Wilck v Country Pointe at Dix Hills Homeowners Assn., Inc. (111 AD3d 822), this Court held that, where the 11-year-old plaintiff "testified at his deposition that he had been playing tennis for several years, was aware of the particular crack prior to his accident, and had generally tried to avoid it when he previously played on that same court," the doctrine of primary assumption of risk required dismissal of the complaint (id. at 823). Finally, in Casey v Garden City Park-New Hyde Park School Dist. (40 AD3d 901), this Court stated that the doctrine of primary assumption of risk required dismissal where the plaintiff tripped in a hole in a basketball court that "was 1½ feet wide and 2 inches deep," the plaintiff had played basketball at the location before, and had been playing for 40 minutes before the accident (id. at 901).
Although some of the foregoing Appellate Division cases applying primary assumption of risk could plausibly be distinguished from one another by reason of the plaintiff's knowledge of the defect in the playing surface, this distinction is not consistent with Court of Appeals' jurisprudence (see Siegel v City of New York, 90 NY2d at 482 [the plaintiff "had known for over two years that the side divider net was ripped"]). In my view, where primary assumption of risk is raised as a defense, the focus should be, as the Court of Appeals has directed, whether the risk was inherent in the sport. Placing undue emphasis on the plaintiff's knowledge of the alleged dangerous condition improperly relieves landowners of their general duty to maintain their property in a reasonably safe condition (see Basso v Miller, 40 NY2d 233, 240-241). Moreover, the Court of Appeals has warned that application of the doctrine of primary assumption of risk "must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (Trupia v Lake George Cent. School Dist., 14 NY3d at 395).
Accordingly, although I find that NYCHA failed to establish that the risk of tripping or twisting one's foot in a crack that is "one to three inches wide and one inch deep" is a risk inherent in the sport of basketball, because NYCHA established that the plaintiff was aware of the cracks on the court and voluntarily chose to play basketball at this location, this Court's precedent compels the granting of NYCHA's motion for summary judgment and dismissing the complaint and all cross claims insofar as asserted against it (see Palladino v Lindenhurst Union Free School Dist., 84 AD3d at 1195; see also Wilck v Country Pointe at Dix Hills Homeowners Assn., Inc., 111 AD3d at 823; Casey v Garden City Park-New Hyde Park School Dist., 40 AD3d at 901-902).
Thus, while I concur in the result reached by my colleagues, I do so only under constraint of this Court's precedent.
ENTER:
Aprilanne Agostino
Clerk of the Court